UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

INTERVEST MORTGAGE
INVESTMENT COMPANY,

                              NO. CIV. S-08-1543 LKK/DAD

       Plaintiff,

  v.
                                O R D E R
KIP S. SKIDMORE and ILLA A.
JONES-SKIDMORE, husband and
wife; the ALASKA TRUST
COMPANY, et al.,

       Defendants.

_____/

    Plaintiff Intervest-Mortgage Investment Co. ("Intervest") moves for summary judgment on defendant Skidmore's sole remaining counterclaim. This counterclaim is brought under California's Unfair Competition Law, and alleges that Intervest acted unlawfully by violating a "safety and soundness" regulation promulgated by the Federal Deposit Insurance Corporation ("FDIC") and codified at 12 C.F.R. § 365.2. Specifically, Skidmores contend that Intervest failed to adopt "appropriate" lending policies, and alternatively,

1

that Intervest violated such policies.

Intervest previously moved to dismiss this counterclaim, on the ground that Skidmores lacked standing to bring this claim. This court denied Intervest's motion in this regard, concluding that Skidmores had standing. Neither party has asked the court to reconsider that judgment. However, having further examined this claim, and mindful of the court's own continuing obligation to ensure that subject matter jurisdiction is proper, the court reverses this earlier decision.

**I. BACKGROUND**

**A.  Regulatory Background**

Congress created the FDIC "to promote the soundness of banking." <u>Weir v. United States</u>, 92 F.2d 634, 636 (7th Cir. 1937).[1] One way in which the FDIC achieves this is to insure deposits in banks. Congress has granted the FDIC the authority to regulate banks that are so insured. <u>See, e.g.</u>, 12 U.S.C. §§ 1828, 1831p-1. Pursuant to this authority, the FDIC requires insured state nonmember banks (such as plaintiff Intervest) to adopt internal real estate lending policies, and has proscribed standards for such policies. 12 U.S.C. § 1828(o), 12 C.F.R. § 356.1. These standards are codified at 12 C.F.R. § 365.2. This regulation provides that:

(a)  Each insured state nonmember bank shall adopt and

---

[1] <u>Weir</u> further held that Congress's intent was "by insuring deposits, to prevent runs on banks by depositors, to preserve solvency of insured banks, and thus to keep open the channels of trade and commercial exchange."

2

        maintain written policies that establish appropriate limits and standards for extensions of credit that are secured by liens on or interests in real estate, or that are made for the purpose of financing permanent improvements to real estate.

   (b)   (1) Real estate lending policies adopted pursuant to this section must:

        (i) Be consistent with safe and sound banking practices;

        (ii) Be appropriate to the size of the institution and the nature and scope of its operations; and

        (iii) Be reviewed and approved by the bank's board of directors at least annually.

        (2) The lending policies must establish:

        (i) Loan portfolio diversification standards;

        (ii) Prudent underwriting standards, including loan-to-value limits, that are clear and measurable;

        (iii) Loan administration procedures for the bank's real estate portfolio; and

        (iv) Documentation, approval, and reporting requirements to monitor compliance with the bank's real estate lending policies.

This regulation is supplemented by an Appendix, and is further interpreted by an Examiner's Manual, neither of which have the force of law. See First State Bank of Hudson County v. United States, 599 F.2d 558, 564 (3d Cir. 1979).

As part of the FDIC's enforcement of these regulations, the FDIC conducts regular examinations of insured depositories. See 12 U.S.C. §§ 1820(b), (d) (empowering the FDIC to examine banks, and requiring examinations every 12 or 18 months); 12 C.F.R. § 337.12. The FDIC's regulations generally prohibit banks from

3

disclosing the results of these examinations or making representations as to the FDIC's findings. 12 C.F.R. § 350.9.

**B.      Intervest's Real Estate Lending Policy**

Intervest has adopted a real estate lending policy. Skidmores argue that this policy is inadequate because it does not contain provisions specifically concerning the following:

- *      disbursement of loan funds after a mechanic's lien has been recorded.
- *      practices and procedures governing deviation from standard disbursement policy.
- *      portfolio diversification standards.
- *      loan value limits.

Intervest does not dispute that its policy does not address the first two elements, but contends that the policy is not required to do so. Intervest argues that the latter two elements have nothing to do with Skidmores' counterclaim, such that any deficiency in this regard is irrelevant; Intervest also contends that its policy does in fact address these issues.

**C.      Intervest's Administration of the Disputed Loan**

The loan underlying this dispute was entered into to finance improvements to a multifamily condominium development in Sacramento, CA, owned by The Crest At Memory Lane, LLC (CAML). In March of 2007, Intervest and CAML entered a loan agreement authorizing payment of $4.7 million. Skidmores provided a personal guaranty for the full amount of the loan, detailed in the "guaranty agreement."

Skidmores argue that several of Intervest's acts in

4

administering the loan demonstrated violations of the safety and soundness regulation, either because these acts violated Intervest's own policy, or because they demonstrated that the policy was insufficient. In particular, Skidmores' challenge Intervest's:

1. Decision not to request that bonds be posted to satisfy mechanic's liens filed on the project, even though such unbonded liens constitute defaults by the borrower.
2. Approval of unbudgeted increases in costs for certain aspects of the project.
3. Continued disbursal funds after the above defaults had occurred.

**D. Procedural History**

Intervest filed this suit seeking to collect on the Skidmores' guaranty on July 3, 2008. The Skidmores responded with an answer and counterclaim asserting numerous state law claims. By order of November 25, 2008, this court granted Intervest's motion to dismiss the counterclaims with respect to all claims but Skidmore's UCL claim. Order of November 25, 2008, Doc. No. 98, 2008 WL 5113780, 2008 U.S. Dist. LEXIS 101979 (E.D. Cal. Nov. 25, 2008).

As to the UCL claim, Intevest's sole argument for dismissal was that the Skidmores lacked standing to bring this claim. The court rejected this argument. The order held that Skidmores satisfied Article III standing requirements by alleging that Intervest had inappropriately disbursed funds (either in violation of its own policies or in compliance with policies that were

5

themselves inadequate), and that this had caused injury to Skidmores by increasing their liability on the guaranty. In discussing prudential standing, the order explained that prudential standing turned on whether Skidmores were within the zone of interests sought to be protected by the UCL, and not whether they were intended beneficiaries of the FDIC regulation. This court then concluded that Skidmores' claim was within the zone of interests protected by the UCL. The court explained that "the FDIC's purposes are relevant only insofar as they might indicate a legislative bar to, or preemption of, a UCL claim, and there is no such indication here." Order at 19 (citing Stop Youth Addiction v. Lucky Stores, 17 Cal. 4th 553, 567-78 (1998)).

## II. ANALYSIS

After further consideration of the issues, this court revisits the conclusion that the Skidmores' claim is within the zone of interests sought to be protected by California's UCL. In so doing, the court does not re-examine the conclusion that Skidmores have satisfied the constitutional minima of standing, or the conclusion that the relevant zone of interests is provided by the statute providing the cause of action, rather than by the law providing the substantive standard sought to be enforced. See Order of November 25, 2008, Doc. No. 98, at 16-20.

As explained in the prior order, under the zone of interest requirement, the question is whether the claim "fall[s] within the zone of interests protected by the law invoked." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (quoting Allen v.

6

Wright, 468 U.S. 737, 751 (1984)). "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002) (citing Barquis v. Merchants Collection Assn., 7 Cal. 3d 94, 110 (1972)). Here, it violates common sense to suggest that a guarantor on a loan can sue a bank under the UCL for a potential violation of a regulation which seeks to protect depositors. The UCL could not have been intended to provide for private enforcement of the FDIC regulation, and Skidmores therefore fall outside the zone of interests sought to be protected by the UCL.[2] Thus, the court reverses its prior conclusion that "the UCL expands standing to the full extent permitted under Article III." Order at 20 (internal quotation omitted).

### III. CONCLUSION

For the reasons stated above, the court ORDERS as follows:

1. This court's order of November 25, 2008, Doc. No. 98, is VACATED insofar as it denied in part plaintiff's motion to dismiss, Doc. No. 64.
2. Plaintiff's motion to dismiss defendants' counterclaims, Doc. No. 64, is GRANTED IN FULL.
3. Plaintiff's motion for summary judgment as to defendants' unfair competition law counterclaim, Doc.

---

[2] Because the court reaches this conclusion, the court need not inquire whether the FDIC regulation has a preemptive effect that would preclude enforcement of the regulation under the UCL even if the UCL had been intended to authorize claims of this type.

7

1     No. 104, is DENIED AS MOOT.
2     IT IS SO ORDERED.
3     DATED:  June 2, 2009.

                                  /s/ Lawrence K. Karlton
                                  LAWRENCE K. KARLTON
                                  SENIOR JUDGE
                                  UNITED STATES DISTRICT COURT